Peggy Hunt (Utah State Bar No. 6060)
Chris Martinez (Utah State Bar No. 11152)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com
       martinez.chris@dorsey.com
       armington.jeff@dorsey.com

*Attorneys for Court-Appointed Receiver R. Wayne Klein*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>                   Plaintiff,<br>v.<br><br>STEVE VAN GORDON, MARILYN VAN GORDON, and JOHN DOES 1-5,<br><br>                   Defendants. | **COMPLAINT**<br><br>**(Ancillary to Case No. 2:12-cv-00591)**<br><br>Civil No. _____ |

R. Wayne Klein, the Court-Appointed Receiver (the "Receiver" or "Plaintiff") of National Note of Utah, LC ("National Note"), its subsidiaries and affiliates (collectively, unless otherwise stated, National Note and all subsidiaries and affiliated entities are referred to herein as "NNU"), and the assets of Wayne LaMar Palmer ("Palmer"), in the case styled as *Securities and Exchange Commission v. National Note of Utah, LC et al.*, Case No. 2:12-cv-00591 (D. Utah) (Jenkins, J.) (the "SEC Civil Enforcement Case"), hereby files this Complaint against Steve Van Gordon ("Steve"), Marilyn Van Gordon ("Marilyn"), and John Does 1-5 ("Defendant Does" and together with Steve and Marilyn, "Defendant"), and states, alleges and avers as follows:

## STATEMENT OF THE CASE

1.  NNU was operated as an enterprise with all of the characteristics of a Ponzi scheme through which money was solicited from investors.[1] Upon information and belief, Defendant was an NNU investor who received monies from NNU, and the Receiver seeks to avoid the transfers and/or recover the value of the transfers from Defendant for the benefit of the receivership estate established in the SEC Civil Enforcement Case discussed in greater detail below.

## PARTIES

2.  Pursuant to an Order Appointing Receiver and Staying Litigation entered on June 25, 2012 in the SEC Civil Enforcement Case (the "<u>Receivership Order</u>"),[2] Plaintiff is the duly-appointed Receiver for National Note and Palmer "together with any and all subsidiaries and affiliated entities of National Note and Palmer. . . ."[3]

3.  Upon information and belief, Defendant Steve is a resident of or is domiciled in in the State of Oregon.

4.  Upon information and belief, Defendant Marilyn is a resident of or is domiciled in in the State of Oregon.

5.  Upon information and belief, Defendant Does are currently unknown parties who have received monies or property from NNU, or are persons to whom Steve or Marilyn has transferred monies or property received from NNU.

---

[1] *See* SEC Civil Enforcement Case, Docket No. 1 (Complaint).

[2] SEC Civil Enforcement Case, Docket No. 9.

[3] *Id.* (Receivership Order, pp. 1-2).

2

## JURSIDICTION AND VENUE

6. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1367.

7. The Court has personal jurisdiction over Defendant.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 754.

## FACTS

### The Ponzi Scheme

9. Since at least 1994 until the commencement of the SEC Civil Enforcement Case, NNU raised capital by soliciting investors to purchase promissory notes, which typically promised to pay interest at a rate of interest above market rates.

10. Upon information and belief, investors understood that they were investing in an enterprise that, among other things, bought and sold mortgage notes, underwrote and made loans, or bought and sold real estate assets through National Note, or one of many affiliated entities subject to the Receivership Order, all of which are referred to herein collectively as "NNU."

11. Typically, investment funds were deposited in a commingled bank account controlled by NNU.  NNU would then transfer such investor funds to another bank account (the "Investor Account").

12. Monies on deposit in the Investor Account were commingled, and transfers to investors by NNU were made from the commingled funds on deposit in that Investor Account.

13. At all times relevant hereto, NNU was insolvent.

### Defendant's Investment and the Transfers

14. On or about 2008, Defendant commenced investing with NNU.  A history of Defendant's investment(s) is attached hereto as Exhibit A.

15.     Defendant paid NNU cash in the total amount of $608,267.45 on or about 2008 (the "Principal Cash Investment").

16.     As set forth on Exhibit A, NNU transferred a total of $635,883.53 in cash to Defendant (the "Total Transfers").

17.     Of the Total Transfers, $27,616.08 is an amount that is over and above Defendant's Principal Cash Investment (the "False Profit Transfers") (collectively, the Total Transfers and the False Profit Transfers are the "Transfers").[4]

### The SEC Civil Case and the Receiver's Appointment

18.     On June 25, 2012, the SEC Civil Enforcement Case was filed, alleging that NNU is a Ponzi scheme, and seeking, among other things, orders (a) restraining and enjoining NNU and Palmer from continuing to violate federal securities laws, (b) freezing assets and prohibiting NNU from transferring, changing, wasting, dissipating, converting, concealing, or otherwise disposing of assets, (c) prohibiting NNU from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of NNU's books and records, (d) imposing civil money penalties against NNU and Palmer, and (e) requiring the disgorgement by NNU and Palmer of all ill-gotten gains received by them pursuant to the scheme.[5]

19.     Also on June 25, 2012, as a result of the filing of the SEC Civil Enforcement Action, the Court entered a Temporary Restraining Order and Order to Show Cause against the defendants[6] and the Receivership Order appointing the Receiver.[7] Since that time, both National

---

[4] *See* Exh.A.

[5] SEC Civil Enforcement Case, Docket No. 1 (Complaint).

[6] *Id.*, Docket No. 7.

Note and Palmer have stipulated to a Preliminary Injunction Order that prohibits National Note and Palmer from committing any further acts in furtherance of the Ponzi scheme and that prohibits National Note and Palmer from withdrawing, transferring, selling, buying, pledging, encumbering, assigning, dissipating, concealing, or otherwise disposing of any of their assets.[8]

20. On or about May 21, 2013, the Court entered an Order authorizing the Receiver to commence legal proceedings for the benefit of and on behalf of the receivership estate.[9]

## FIRST CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-5(1)(a) and 25-6-8)*

21. The Receiver realleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

22. NNU was engaged in an enterprise with all of the characteristics of a Ponzi scheme.

23. NNU made the Transfers to Defendant in furtherance of the Ponzi scheme.

24. At all relevant times hereto, NNU had at least one creditor.

25. The Transfers were made and any obligations to Defendant incurred with actual intent to hinder, delay or defraud a creditor of NNU.

26. Pursuant to Utah Code Ann. §§ 25-6-5(1)(a) and 25-6-8, the Receiver may avoid and recover the Transfers to Defendant.

27. Alternatively, to the extent that Defendant took in good faith and for a reasonably

---

[7] *Id.*, Docket No. 9.

[8] *Id.*, Docket Nos. 45 and 46.

[9] *Id.*, Docket No. 315.

equivalent value, the Receiver may avoid and recover the False Profit Transfers from Defendant.

## SECOND CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-5(1)(b) and 25-6-8)*

28.     The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

29.     NNU was engaged in an enterprise that has all of the characteristics of a Ponzi scheme.

30.     NNU made the Transfers to Defendant in furtherance of the Ponzi scheme.

31.     At all relevant times hereto, NNU had at least one creditor.

32.     The Transfers were made or the obligations to Defendant were incurred by NNU without receiving a reasonably equivalent value in exchange for the Transfers or obligations.

33.     At the time the Transfers were made, NNU (a) was engaged or was about to be engaged in a business or transaction for which the remaining assets of NNU were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debts became due.

34.     Pursuant to Utah Code Ann. §§ 25-6-5(1)(b) and 25-6-8, the Receiver may avoid and recover the Transfers to Defendant.

35.     Alternatively, to the extent that Defendant took in good faith and for a reasonably equivalent value, the Receiver may avoid and recover the False Profit Transfers from Defendant.

## THIRD CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-6(1) and 25-6-8)*

36.     The Receiver re-alleges and incorporates herein by reference each of the

preceding allegations as if set forth completely herein.

37. NNU was engaged in a Ponzi scheme.

38. NNU made the Transfers to Defendant in furtherance of the Ponzi scheme

39. NNU had at least one creditor at the time that the Transfers were made or the obligation to Defendant was incurred.

40. The Transfers were made or the obligation to Defendant was incurred by NNU without NNU receiving a reasonably equivalent value in exchange for the Transfer or obligation.

41. NNU was insolvent at the time the Transfers were made or the obligation was incurred, or became insolvent as a result of the Transfers or the obligation incurred.

42. Pursuant to Utah Code Ann. §§ 25-6-6(1) and 25-6-8, the Receiver may avoid and recover the Transfers to Defendant.

43. Alternatively, to the extent that Defendant took in good faith and for a reasonably equivalent value, the Receiver may avoid and recover the False Profit Transfers from Defendant.

### **FOURTH CLAIM FOR RELIEF**
*(Constructive Trust)*

44. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

45. The Transfers to Defendant were comprised of property of NNU and were made by NNU in furtherance of the Ponzi scheme.

46. Allowing Defendant to retain the Transfers would unjustly enrich Defendant and would be inequitable.

47. The Transfers can be traced to wrongful behavior.

48.     An injustice would result if Defendant was allowed to keep the Transfers.

49.     A constructive trust for the benefit of the receivership estate must be imposed for the benefit of the receivership estate in the amount of the Transfers made by NNU to Defendant, or in the alternative if Defendant acted in good faith, for the False Profit Transfers.

## FIFTH CLAIM FOR RELIEF
*(Unjust Enrichment)*

50.     The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

51.     The Transfers to Defendant were comprised of property of NNU and were made by NNU in furtherance of the Ponzi scheme.

52.     The Transfers conferred a benefit upon Defendant.

53.     The Defendant knowingly benefitted from the Transfers.

54.     Allowing Defendant to retain the Transfers would unjustly enrich Defendant and would be inequitable.

55.     Absent return of the Transfers, the receivership estate will be damaged by Defendant's unjust enrichment and may have no adequate remedy at law.

56.     Defendant must disgorge the amount of the Transfers, or if Defendant acted in good faith, the False Profit Transfers, for the benefit of the receivership estate.

## SIXTH CLAIM FOR RELIEF
*(Disgorgement)*

57.     The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

58.     The Transfers were made as part of and in furtherance of a Ponzi scheme.

59. The Transfers were ill-gotten by Defendant.

60. Defendant has no claim to the Transfers made by NNU, or derivatively, from NNU's investors.

61. All Transfers made to Defendant, or if Defendant acted in good faith, the False Profit Transfers, should be disgorged to the Receiver for the benefit of the receivership estate.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver prays for Judgment against Defendant as follows:

A. Pursuant to the Receiver's First Claim for Relief, judgment against Defendant avoiding the Transfers under Utah Code Ann. §§ 25-6-5(a)(1) and 25-6-8, and permitting Plaintiff's recovery of the value of the Transfers in the total amount of $635,883.53, or alternatively, the amount of the False Profit Transfers, in the total amount of $27,616.08.

B. Pursuant to the Receiver's Second Claim for Relief, judgment against Defendant avoiding the Transfers under Utah Code Ann. §§ 25-6-5(a)(2) and 25-6-8, and permitting Plaintiff's recovery of the value of the Transfers in the total amount of $635,883.53, or alternatively, the amount of the False Profit Transfers, in the total amount of $27,616.08.

C. Pursuant to the Receiver's Third Claim for Relief, judgment against Defendant avoiding the Transfers under Utah Code Ann. §§ 25-6-6(1) and 25-6-8, and permitting Plaintiff's recovery of the value of the Transfers in the total amount of $635,883.53, or alternatively, the amount of the False Profit Transfers, in the total amount of $27,616.08.

D. Pursuant to the Receiver's Fourth Claim for Relief, judgment against Defendant imposing a constructive trust for the benefit of the receivership estate on any and all Transfers, or alternatively, all False Profit Transfers.

E. Pursuant to the Receiver's Fifth Claim for Relief, judgment against Defendant for unjust enrichment, and requiring Defendant to disgorge the Transfers in the total amount of $635,883.53, or alternatively, the amount of the False Profit Transfers, in the total amount of $27,616.08.

F. Pursuant to the Receiver's Sixth Claim for Relief, entry of an Order requiring Defendant to disgorge the Transfers in the total amount of $635,883.53, or alternatively, the amount of the False Profit Transfers, in the total amount of $27,616.08.

G. Judgment for pre-judgment interest, costs, and fees, including reasonable attorney's fees, as may be allowed by law.

H. For such other and further relief as the Court deems just and proper.

DATED this 12th day of June, 2013.

**DORSEY & WHITNEY LLP**

 /s/ Peggy Hunt
Peggy Hunt
Chris Martinez
Jeffrey M. Armington
*Attorneys for Receiver*